SUCCESSION OF CRIADO, PLAINTIFF AND APPELLANT, *v.* MARTÍNEZ ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Ponce in an Action of Ejectment, for Damages and for Annulment of Conveyances.

No. 1459.—Decided June 5, 1917.

EXECUTOR—FORCED HEIR—PROPERTY OF MINORS—AUTHORIZATION OF COURT.—When there are forced heirs who are minors the executors named by the testator with authority to pay his debts cannot alienate real property for that purpose without being joined by said heirs after obtaining the authorization of the court required by law for the sale of property of minors.

ID.—PRESCRIPTION.—The prescription referred to in section 1268 of the Civil Code is not applicable to a case where the executor is not joined by the heirs and does not obtain the authorization of the court.

ADMINITRATIVE APPEAL—JURISPRUDENCE.—A decision rendered in an administrative appeal does not establish jurisprudence and therefore the court is not bound to follow it.

The facts are stated in the opinion.

*Messrs. Vicente Zayas Pizarro* and *Nemesio R. Canales* for the appellant.

*Messrs. José* and *Manuel Tous Soto* for the appellees.

MR. JUSTICE DEL TORO delivered the opinion of the court.

In the year 1903 Miguel Criado y Blas died testate leaving forced heirs and property. The twelfth clause of his will reads as follows:

"He appoints as his testamentary executors, auditors, partitioners and commissioners his brother, Manuel Antonio Criado, principally as regards his property in Spain; Pedro José Alvarado, a resident of the ward of Bauta, Barros, Porto Rico, and Rosa Rodríguez, a resident of the ward of Hato Puerco Arriba, Juana Díaz; the three jointly and *in solidum*, with authority to take possession of his property, liquidate accounts, settle balances, represent the estate in or out of court, withdraw and create deposits, charges and balances of accounts current, sell property if necessary for the settlement of the estate itself and perform all the transactions of the same extra-judicially; for he absolutely prohibits any recourse to the courts unless it should be strictly indispensable, with an extension of the legal period of the executorship for one year if they should find it necessary."

On April 6, 1905, one of the executors, Pedro José Alvarado, acting as such alone and without the intervention of the forced heirs, who were minors at that time, and without the authorization of the court, conveyed four rural properties to the defendants for $5,261.08 in payment of a certain debt which the testator had contracted with them during his life.

The plaintiffs allege that the executor had no authority to make the said conveyance under such conditions. The defendants contend that he had. The court decided in favor of the defendants and thereupon the plaintiffs took the present appeal.

Admitting that by virtue of the clause of the will transcribed the testator authorized his executors to convey property in payment of debts, nevertheless we are of the opinion that in the execution of their trust the said executors could not disregard the forced heirs, who were then the sole owners of the estate, and, the heirs being minors, the conveyance

could not be made validly. without the authorization of the court.

When the testator died and when the property was conveyed the Revised Civil Code was in force in this Island, and section 875 of the said code provides that "Executors of wills shall have all the powers expressly conferred upon them by the testator and which are not contrary to law."

The testator did not expressly authorize his executors to disregard his forced heirs, but it is contended that, having been authorized generally to sell property, without reference to the heirs, they had full power to act severally, as one of them did in this case. We hold that if the said clause of the will be interpreted in this sense, as it has been interpreted by the defendants and by the trial court, then the authority conferred upon the executors would be contrary to the law and therefore void.

While the inheritance remains vacant because the heirs designated by law have not accepted it, the personality of the decedent is presumed to exist. Judgment of the Supreme Court of Spain of June 8, 1861. The application of that rule in all its force to all cases is what, in our opinion, produces the diversity of opinion as regards the powers of executors in cases of inheritances which are not vacant but have been accepted by the heirs. It is understood that when there are no heirs the executor may act alone; but when there are heirs who, pursuant to section 669 of the Revised Civil Code, "succeed the deceased in all his rights and obligations by the mere fact of his death," they cannot be disregarded. To hold that a testator can order that after his death a person who is not one of the heirs may sell real property belonging to his estate without the intervention of his forced heirs, whether they be adults or minors, would be to destroy the entire system established by the Civil Code, especially by the general provisions of sections 664 a to 669 thereof.

According to the jurisprudence of the Supreme Court of Spain, "executors have the character of agents of the testator

and not of the heirs'' (78 Civil Jurisprudence, 26) and should be governed in the discharge of their trust by the conditions of the will ''in everything which is not particularly regulated.'' 100 Civil Jurisprudence, 391. But the sale of property of minors is particularly regulated by law; therefore in a case where there are minor heirs, even if the executor were expressly authorized by the testator to sell real property for the payment of debts, in order to make such sale validly he would have to comply with the rules prescribed by law for the sale of property of minors.

If we study the old laws we shall find, for example, that Law 62, Title 18, *Partida* 3, regulates, among others, the case of the sale of a testator's property for the payment of his debts when the testator had conferred upon the executor the power to sell. The proceeding prescribed is not the same as that established by Law 60 of the same title and *partida* for the sale of property of minors, but it was held that the two laws could be harmonized, the executor complying with the requirements prescribed by the law for the sale of property of minors where there were minors. See I Escriche, Law Dictionary, 395, and III Spanish Codes Ann. 218, 219.

''Even when said executors,'' said the Supreme Court of Spain in its judgment of October 22, 1857, ''have the character of arbitrators and amicable compounders, they cannot convey property of the estate without making an inventory, especially when there are forced heirs and minors.'' And it went on to say ''that executors cannot alienate the property of minors without showing necessity or utility therefor and without the intervention of the guardian and the authorization of the court, which formalities cannot be dispensed with however ample the power may be.'' 2 Civil Jurisprudence, 406, 407.

In our opinion section 875 of the Revised Civil Code, which is the same as article 901 of the old Civil Code, did not change materially the provision of the former laws in regard to executors. In the note to article 901 of the Spanish

Civil Code, p. 284 of Vol. III of his Commentaries, Falcón says:

"It proceeds from article 902 of the said proposed law (that of 1882) in conformity with the first part of article 728 of the proposed law of 1851. Really the doctrine proceeds from Law 32, Title 9, *Partida* 6, which in turn was taken from Law 55, Book 31, of the Digest."

There is an error in the citation of the Law of *Partidas.* Instead of Title 9 it should be Title 10, which treats of *executoribus textam.* See IV Spanish Codes, 163.

Formerly and now the executor was and is considered the agent of the testator and not of the heirs. Formerly, as at present, it was the will of the testator which should be complied with; but formerly and now there existed and exists the principle of limitation that what was directed by the testator to be done and what was or is done by the executor should not be contrary to law. Paramount to the individual is society, which regulates his actions by means of laws enacted by bodies specially created for that purpose.

The Spanish commentators are not in harmony regarding the matter. Manresa's opinion seems to incline to the authority of the executor to sell property when so authorized by the testator regardless of the heirs. 6 Manresa, Civil Code, 752 *et seq.* Galindo and Escosura sustain the same theory. 2 Galindo and Escosura, Mortgage Legislation, 75 *et seq.* And also Sánchez Román. Sánchez Román, Civil Law, 1425. On the other hand, Scaevola concludes, and correctly we think, that "if the parents themselves cannot alienate the property of their children which they manage and use, they could hardly authorize other persons, such as executors, to sell property of the estate in whose conveyance a minor heir is interested. Therefore, such sale must be made with the authorization of the court." 15 Scaevola, Civil Code, 480.

Nor are the decisions of the General Directorate of Registries in accord, for while some favor the theory maintained by the defendants and by the trial court, others uphold the

contention of the appellants. In our opinion the reasoning of the latter better harmonizes all the provisions of the code, inasmuch as in recognizing the powers of the testator and the executor it also recognizes the rights of the heirs, whether adults or minors, thus applying wholly the idea of the legislator in the matter. We will cite only the decision of May 30, 1895. Its first conclusion reads as follows:

"The deed of sale presented in the registry for record was executed by an executor who, although empowered to sell under the will, acted without the lawfully required concurrence of the forced heir who succeeded the testator and who, as it appears from the record, was also absent, for these reasons the refusal to record the deed being justified; and the executor could not claim support under the provision of article 901 of the Civil Code only because it provides that executors shall have the powers conferred upon them by the testator; for the same article establishes the express limitation that the powers must not be contrary to law, and as the law, in its relation to the case under consideration, recognizes in the forced heir a right prior to and independent of any will, whatever in the will opposes, limits, contradicts or adversely affects that recognized right cannot prevail without his intervention in the manner provided for according to the case." 3 Jurisprudence, Civil Code, by V. A. M. 161.

The decision of this court in the case of *Martínez et al.* v. *Registrar of Property,* 15 P. R. R. 66, does not establish jurisdiction, as it was rendered in an administrative appeal, and its reasonings being submitted to the test of this case, we are compelled, for the reasons already stated, to refrain from following them.

Finally, we wish to say that the opinion rendered by the Supreme Court of the United States in the case of *Longpré* v. *Díaz,* 237 U. S. 512, cited and followed by us in the case of *Del Rosario et al.* v. *Rucabado et al.,* 23 P. R. R. 438, has greatly influenced us in the rendition of this decision. Although the cases are not entirely similar, after an examination of the facts and the law in this case in the light of the principles established by the Supreme Court in the case of *Longpré, supra,* it requires no effort to observe that it is

impossible to reach any other conclusion than that executor Alvarado could not sell the property of the minor plaintiffs without complying with the general requirements of the law regarding the sale of property belonging to minors.

As to the question of prescription, it is sufficient to invoke the doctrine laid down by the Supreme Court in the said case of *Longpré, supra,* and by this court in the cases of *Oliver et al.* v. *Oliver,* 23 P. R. R. 168, and *Succession of Suro* v. *Prado et al.,* 21 P. R. R. 227, in order to conclude that the prescription period of four years to which the defendants refer is not applicable to this case.

For the foregoing reasons the judgment appealed from should be reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Justices Wolf and Hutchison concurred, the former ''in the judgment.''

Chief Justice Hernández and Justice Aldrey dissented.

### CONCURRING OPINION OF MR. JUSTICE WOLF.

I think it makes no difference, as against an executor, whether the minors are forced heirs or not. The authority, if any, given to the executor to pay debts by specific transfers of property is subject to the rights of forced heirs, and before such a conveyance takes place the said forced heirs, if their consent cannot be obtained, ought to be cited and heard. While I say that the status of the heirs makes no difference, yet, as in the vast majority of estates there are minors, the intention of the legislature to make an exception in favor of an executor, so as to permit him to convey without authority, is not manifest.

In this case, moreover, the executor was only authorized to sell the property if necessary. This is a very different power from the power to make an adjudication of land for

the payment of a debt, as was attempted to be done in this case. Powers must be construed strictly.

### DISSENTING OPINION OF MR. CHIEF JUSTICE HERNÁNDEZ IN WHICH MR. JUSTICE ALDREY CONCURS.

The Succession of Miguel Criado y Blas, composed of his acknowledged natural children Rosa, Aurora, María, and Miguel Criado y Rodríguez, the two last named being minors and represented by their unwedded mother, Rosa Rodríguez, filed a complaint against Angel and Manuel Martínez Caballero in the District Court of Ponce praying that a certain deed of conveyance executed by Pedro José Alvarado, as testamentary executor of the estate of Miguel Criado y Blas, in favor of the defendants in payment of a debt and its record in the registry be adjudged null and void; that the plaintiff succession be declared the sole and absolute owner of the properties conveyed; that the defendants be ordered to restore the said properties to the plaintiffs and pay them $18,000 as damages, and that the costs, disbursements and fees of counsel for the plaintiffs be imposed upon the defendants.

The case was tried and the court rendered judgment on July 27, 1915, dismissing the complaint on the grounds that the conveyance made by the executor to the defendants in payment of a debt was not void, and that the said action was barred by limitation pursuant to section 1268 of the Civil Code. From that judgment the attorney for the succession appealed to this court.

The facts as shown by the complaint, the answer, the evidence examined at the trial and the admissions of both parties as set out in the statement of the case, are as follows:

(1) Miguel Criado y Blas died in the year 1903, leaving as his successors or heirs four acknowledged natural children begotten with Rosa Rodríguez and named Rosa, Aurora, María Manuela and Miguel, they having been born in 1887, 1889, 1894 and 1897 respectively.

(2) Miguel Criado y Blas died leaving a will made in Madrid, Spain, on September 20, 1905; whose twelfth and pertinent clause reads literally as follows:

*"Twelfth.*—He appoints as his testamentary executors, auditors, partitioners and commissioners his brother, Manuel Antonio Criado, principally as regards his property in Spain; Pedro José Alvarado, a resident of the ward of Bauta, Barros, Porto Rico, and Rosa Rodríguez, a resident of the ward of Hato Puerco Arriba, Juana Díaz; the three jointly and *in solidum,* with authority to take possession of his property, liquidate accounts, settle balances, represent the estate in or out of court, withdraw and create deposits, charges and balances of accounts current, sell property if necessary for the settlement of the estate itself and perform all the transactions of the same extra-judicially; for he absolutely prohibits any recourse to the courts unless it should be strictly indispensable, with an extension of the legal period of the executorship for one year if they should find it necessary."

By public instrument No. 76 executed on April 6, 1905, before Notary Felipe Rodríguez in Juana Díaz, Pedro José Alvarado y Rivera, as testamentary executor of the deceased Miguel Criado y Blas and by virtue of the said clause of the will, which is also copied into the said instrument, conveyed four rural properties of the estate, as described in the said instrument, to Angel and Manuel Martínez Caballero in payment of a debt of $5,261.05.

None of the heirs of Miguel Criado y Blas, plaintiffs herein, had become of age when the said conveyance was made on April 6, 1905, and the deed was executed without the intervention of the said heirs and without the authorization of the court.

The plaintiffs and the defendants agree that the only question at issue in this case is whether an executor authorized by the testator to sell property, if necessary for the settlement of his estate, is empowered to convey real property of the estate to a creditor in payment of a debt without any other formality than the mere execution of a deed of

conveyance when there are minors having an interest in the estate, and whether as a consequence the deed of conveyance under consideration is null and void.

In order to simplify the point of law at issue it appears to us that the question to consider and decide is whether an executor authorized to sell property of the testator may do so without the intervention of the interested heirs; for if such intervention in general terms is not necessary, the authorization of the court would be unnecessary also in case of minor heirs.

Section 875 of the Revised Civil Code lays down the rule to be followed in order to determine essentially the powers of executors. It reads as follows:

"Sec. 875.—Executors of wills shall have all the powers expressly conferred upon them by the testator and which are not contrary to law."

In cases to which the foregoing provision cannot be applied section 876 provides what the powers of executors shall be, as follows:

"Sec. 876.—Should the testator not have specially determined the powers of the executors they shall have the following:

"1. To dispose and pay the suffrages and funeral expenses of the testator in accordance with the provisions made by him in his will and, in their absence, according to the customs of the town.

"2. To pay, with the knowledge and consent of the heir, the cash legacies.

"3. To carefully see to the execution of the other provisions of the will and maintain, when just, its validity in and out of court.

"4. To take the necessary precautions for the preservation and custody of the property, with the intervention of the heirs who may be present."

As auxiliary and complementary to section 876 section 877 provides:

"Sec. 877.—Should there not be in the estate cash enough for the payment of the funeral expenses and legacies, and the heirs should not contribute from their own funds thereto, the executors

shall sell the personal property; and should the proceeds therefrom not be sufficient, the real property shall be sold, with the intervention of the heirs.

"If a minor, absentee, corporation, or public institution should have any interest in the estate, the sale of the property shall take place with the formalities prescribed by law for such cases."

Said section 877 is applicable to the case referred to in section 876; that is to say, when the executors act by mere authority of law, but not to the case foreseen in section 875, or when they act by express authority of the testator.

The provision of section 875 is general and absolute and is not affected by any condition other than that the powers conferred by the executor shall not be contrary to law. There is no law providing that the heirs shall intervene in the sale of real property when made by the executor under the authority of the testator and, therefore, their failure to intervene is not contrary to law.

In commenting upon article 901 of the Spanish Civil Code (sec. 875 of our code) Manresa expresses himself as follows:

"The will of the testator is the controlling law in the matter. * * *.

"As the testator, in authorizing the sale of property, may determine its object, he may direct also how the same shall be made. He may require a public sale or the intervention of the heirs or other formalities; but if he gives unconditional authority for the alienation of all or part of his property without any limitation, the executor may sell it in the manner which he deems most convenient; and it cannot be required that the heirs intervene or that the sale be at public auction or that any other formality be followed when the heirs are voluntary heirs. Article 903 (sec. 877 of the Rev. Code) is not applicable, because in that case the heirs really sell with the intervention of the executor who received no special powers from the testator, whereas the heirs have no participation in the act when the testator expressly authorizes the executor to sell without any restrictions." VI Manresa, Civil Code, 752, 754–55.

Nor can it be deduced from the remarks of the distinguished commentator that when there are forced heirs their

intervention in the sale is necessary, for on page 756 of Volume VI Manresa again says:

"When the authority infringes no provision of the statutory law the will of the testator governs. This is established by the judgment of January 27, 1896, confirming the doctrine of article 901 (sec. 875 of the Rev. Code). *The authority to sell property for the payment of debts cannot be said to be contrary to law because of the sole fact that there are forced heirs.* Only after the debts are paid are the legitime and free portion determined; and if the forced heirs should be prejudiced by the sale of the property for less than its value, they may, as stated by Escosura in his Commentaries on the Mortgage Law, be reimbursed from the free portion, or as a last recourse, claim against the executors or bring whatever action they may deem proper to repair the injury."

The judgment of the Supreme Court of Spain of January 27, 1896, cited by Manresa, holds that the will of the testator determines the powers and, therefore, the personality of the executor. Galindo and Escosura, distinguished commentators on the Mortgage Law, sustain the same doctrine in the following terms:

"Can it be maintained that such power (the power to alienate property in payment of debts so often conferred upon executors) is contrary to law?

"If there are only voluntary heirs it may be stated positively that it is not, because they are such only by the will of the testator to which they are absolutely subordinated." Judgments of November 5, 1887, and September 16, 1890.

"If there are forced heirs the question is not so easily decided. The decision of the Minister for the Colonies of May 30, 1895, holds that a deed executed by an executor with power to sell cannot be recorded unless the heir intervened, which decision is based on the fact that although article 901 of the Civil Code (sec. 875 of the Rev. Code) provides that executors shall have all the powers expressly conferred upon them by the testator, the same article establishes the limitation that the powers must not be contrary to law, and the power to sell property without the intervention of the forced heirs is contrary to law. *This last holding is not conclusive inasmuch as it does not specify the statute to which it is contrary.*

"There can be no other objection than that by exercising this power the executor may affect the heir's legal portion which is given to him by law and not by the will of the testator, and the law does not allow any lien, condition or substitution of whatever class to be imposed upon it.

"This argument loses its force when it is simply borne in mind that, in order to determine the legitime, the value of the property of the testator at the time of his death governs *after deducting the debts and charges*" (arts. 813 and 818).

· "Then, if the legitime is that part of the estate which belongs to the forced heir *after deducting* the debts, it cannot be maintained that the power which the testator confers upon the executor to sell property for the payment of the debts is a lien, condition or substitution of any kind imposed upon the legitime.

"The legitime gives a right only to the portion of which it may consist and does not prevent the alienation of property for the payment of debts, or its alienation without the intervention of the heirs when the testator has not so directed, or that the payment be made with particular properties; and in support of this doctrine articles 1056 and 1057 authorize the testator not only to partition his property himself by an act *inter vivos* or by will, even providing that the legal portions may be paid in cash to certain children, but also authorizes him to intrust the mere power of making the partition to any person, and the heirs will be bound thereby in so far as it does not affect their legal portions. * · * *.

"Such is our opinion, in strict accord with that of the Directorate of Registries, which, in the third conclusion of its decision of May 10, 1890, establishes the doctrine that the power conferred upon executors to sell property in payment of debts is not contrary to law whether there are forced heirs or not." Galindo and Escosura, Mortgage Law, Vol. II, pp. 73-75, ed. 1903.

Articles 813, 818, 1056 and 1057 of the Spanish Civil Code, cited by Galindo and Escosura, correspond to sections 801, 806, 1023 and 1024 of the Revised Civil Code.

In its decision of May 10, 1890, the General Directorate of Registries of Spain held that no record could be made of a deed of conveyance of real property executed by an executor appointed by the testator with the necessary powers to execute his last will, including the powers to sell what might

be necessary, for the purpose of paying the testator's debts and to partition the estate.

In that appeal it was contended that the deed could not be admitted to record because the heirs of the testator were not parties thereto, but the General Directorate of Registries overruled that contention and held that the sale was not recordable unless it was shown to have been made for the payment of the testator's debts, basing its decision on the following grounds: that the testator having died after the adoption of the Civil Code, the executors appointed by him should be governed in the exercise of their trust by the code according to its transitory provisions; that article 901, *supra,* (sec. 875 of the Rev. Code) provides that executors shall have all the powers expressly conferred upon them by the testator which are not contrary to law; that no limitations other than those imposed by the testator should control the exercise by the executor   *   *   *   of the power conferred upon him to sell the property in payment of debts, whether there be forced heirs or not, and that in the case which gave rise to the appeal the executor did not prove, although he alleged it, that the sale was made for the payment of debts, this being an indispensable element in order to decide whether he acted within the powers conferred upon him.

As is seen, according to the decision of May 10, 1890, the exercise of the power given the executor to sell property has no other limitation than that imposed by the testator and, therefore, when the latter does not direct that the heirs shall intervene in the sale, such intervention is not necessary, but the executor should show that he did not transcend the will of the testator in the exercise of that power.

That decision is not in accord with the later one of May 30, 1895, which is attacked by Galindo and Escosura and which the appellant copies literally in his brief in support of his contention. That decision holds that there is good ground for refusing to record a deed of sale executed by an executor who, while empowered by the will to sell, acted

without the lawfully required intervention of the forced heir who succeeded the testator and who, as it appears from the record, was also absent, and that the executor could not claim support under the provision of article 901 of the Civil Code simply because it provides that executors shall have the powers conferred upon them by the testator; for the same article establishes the express limitation that the powers must not be contrary to law, and as the law, in its relation to the case under consideration, recognizes in the forced heir a right prior to and independent of any will, whatever in the will opposes, limits, contradicts or adversely affects that recognized right cannot prevail without his intervention in the manner provided for according to the case.

We think the grounds upon which Galindo and Escosura attack the decision of May 30, 1895, are worthy of attention, and we adopt the former decision of May 10, 1890, because it conforms more closely to the letter and spirit of the law and to the nature of the executorship. And our opinion is strengthened by the wise Spanish professor, Sánchez Román, who in his work on Civil Law says:

"This power to sell all or part of the property having been conferred in absolute terms without directing anything regarding form, requisites or intervention by other persons, the executor is authorized to alienate in any form, and no knowledge, approval or intervention on the part of the heirs is necessary, because these requisites, referred to in articles 902 and 903, correspond to the lawful and subsidiary rules of executorship in the absence of the free will of the testator which is governed by the general provisions of article 901; providing that the will of the testator shall be supreme as to the powers conferred upon the executor, always provided such powers are not contrary to law, which means that the executor may do everything that the testator could do himself, if the testator, in the free exercise of his judgment, expressly so empowers him, subject only to legal prohibitions." VI Sánchez Román, 1425.

And Scaevola does not favor the theory of the appellant. The comments quoted from Scaevola were made as an interpretation of subdivision 2 of article 903 of the Spanish Civil

Code (sec. 877 of the Rev. Code) upon the question raised with regard to the right of the parents representing minor children to intervene in sales made by executors. XV Scaevola, 480. We agree with Scaevola that in the case referred to by him the intervention of the court in the sale is necessary; but as Scaevola himself, in commenting upon article 901 of the Spanish Civil Code (sec. 875 of the Rev. Code), apparently concurs in the decision of the General Directorate of Registries of May 30, 1895, we must add that that attitude is not in accord with that assumed in treating of the formalities to be observed by executors for the judicial sale of hereditary property in the case foreseen by article 903 of the Spanish Civil Code (877 of the Rev. Code), for after describing said formalities he concludes as follows:

"Finally, the very order in which articles 901, 902 and 903 appear and the great importance which should be given always to all the directions of the testator authorize the conclusion that the special rules enumerated for the sale of hereditary property will not govern when the executor is authorized by the will to sell property of the estate. As we have said, the judgment of June 28, 1882, held that although Law LXII, Title XVIII, *Partida* 3, establishes the principle that sales made by executors must be made at public auction, *so as to avoid all possibility of fraud,* this is to be understood as applicable *only to ordinary cases of executorship* and not to where the testator endows his executor with extraordinary powers and directs in what manner the property is to be sold in order to carry out his wishes, which is the only standard to which the acts of the executor must be subordinated." XV Scaevola, Civ. Code, 487.

By its nature executorship is a real power of attorney and the executors must be governed by its conditions in everything that is not particularly regulated, according to the judgment of the Supreme Court of Spain of February 24, 1905, the executors having the character of attorneys in fact of the testator in everything appertaining to the discharge of their trust, according to a previous judgment of the same tribunal of April 17, 1900. The sale of property of minors, on the date on which the conveyance whose rescis-

sion is prayed for was made, or April 6, 1905, was specifically regulated by section 229 of the Civil Code then in force in case of said sale by the parents, or by section 282 of the same code when made by the tutor; but if the sale were to be made by an executor expressly authorized by the testator to sell, the said code contains no provision controlling the said executor, although if the testator had not expressly conferred that power upon him he could not make the sale without the intervention of the heirs or the authorization of the court, as the case may be. We refer to sections 875, 876 and 877 which we have transcribed. The *Partida* Laws and the jurisprudence of the Supreme Court of Spain construing those laws are not applicable to the present case in so far as they are in conflict with the provisions of the Civil Code, which should govern this matter.

Going back to the doctrine of the General Directorate of Registries of Spain prior to the enactment of the Civil Code, we find that by its decision of October 18, 1869, the said Directorate established the doctrine that although Law LXII, Title XVIII, *Partida* 3, requires that sales made by executors shall be at public auction, that general rule is not extended to cases where the will of the testator may have directed otherwise, because the will is law in matters testamentary; and it having been set out in clause 7 of the will made by the Marquis of Algorfa that he authorized his executors to sell such real or personal property as might be necessary for the partition of the estate without allowing the interference of any person or authority under the pretense of taking accounts or otherwise, there is no doubt that the executor could sell the property at private sale, as held in the judgment of January 17, 1866.

When the testator authorizes the executor to sell property of his estate without requiring the intervention of the heirs, such intervention is not necessary to the validity of the sale, inasmuch as the executor acts as the agent of the testator. The executor is a prolongation or continuance of

the personality of the testator and it is not possible to impose upon him conditions which the testator did not impose upon him for executing those acts which he expressly authorized.

In the present case the testator, Miguel Criado y Blas, authorized his executors, Pedro José Alvarado among them, to take possession of his property, liquidate accounts, settle balances, represent the estate in and out of court, withdraw and create deposits, charges and balances of accounts current, *sell property if necessary for the settlement of the estate itself*, and perform all the transactions of the same extrajudicially, absolutely prohibiting any recourse to the courts unless it should be strictly indispensable.

In conferring upon his executors the power to sell property if necessary for the settlement of the estate the testator, Miguel Criado y Blas, made no distinction between personal property and real property and the necessity for the sale was left to the judgment of the executors without any other limitation than that it was to be made for the settlement of the estate. And by "settlement of the estate," as defined by Manresa and Reus, "is understood everything which relates to the execution of the last will; hence it includes the meeting of the testamentary executors, the collection of documents and other papers necessary to give compliance to the will of the testator, the private and extra-judicial proceedings and transactions performed by the testamentary executors or the heirs themselves for the purpose of making inventories, appraisements, payments of debts and legacies; liquidation and partition of the inheritance, as well as the execution of all the other directions of the testator, and, finally, the judicial proceedings which for the same purpose are sometimes instituted officially and at others at the instance of a party." Chief among the directions connected with the settlement of the estate of Miguel Criado y Blas was the payment of debts, for while these remained unpaid there could be no inheritance. "The inheritance," said Alfonso the Wise, "comprises

the property and the rights of a decedent after first deducting the debts he owes and the property belonging to others.''

In any event, in order to ascertain the will of the testator, Miguel Criado y Blas, as to the powers of his executors we must resort to section 683 of the Civil Code, which reads as follows:

''Every testamentary provision shall be understood in the literal meaning of its words, unless it clearly appears that the will of the testator was different. In case of doubt, that which appears most in accordance with the intention of the testator, according to the tenor of the same will, shall be observed.''

The scope we give to the powers expressly conferred by the testator upon the executors does not destroy the system established by the Civil Code, especially by the general provisions of sections 664a to 669. Those provisions do not conflict with the opinion we have formed of the executorship voluntarily created by the testator and governed by section 875 of the Civil Code. The provision of section 665 that the rights to the succession of a person are transmitted from the moment of his death does not prevent the passing of those rights to the heirs subject to the liens affecting them and the conditions imposed by the testator, provided they do not affect the legitime of the forced heirs.

The power of sale conferred upon an executor does not affect *per se* the legitime of the forced heirs.

It is true that the plaintiff alleged in the complaint that the sum paid to the defendants was not owed, that the conveyance was obtained by means of a false document which was never signed or executed by the deceased Miguel Criado y Blas, and that the property conveyed in settlement was worth at least $10,000 on April 6, 1905, the date of the conveyance; but the statement of the case shows that the plaintiff accepted the conclusion reached by the District Court of Ponce as to the authenticity of the document upon which the conveyance was based and, therefore, both parties agreed to omit from the said statement the evidence introduced by the

plaintiff and defendant on that point and to include sub-
stantially only that introduced to show the lack of authority
on the part of Pedro José Alvarado to convey property
belonging to the plaintiff succession in payment of debts, the
members of the succession being minors, without the proper
authorization of the district court; and, as we said at the
beginning, the appellant in its brief limits the legal question
submitted on appeal to a consideration of whether the deed
of conveyance of April 6, 1905, is void on the sole ground
that the minor heirs of Miguel Criado y Blas were not parties
thereto and that the requisites prescribed by law for the
alienation of real property belonging to minors were not
complied with, any other questions that might arise from the
allegations of the complaint being, therefore, foreign to the
issue.

The conveyance was made for the payment of a lawful
debt due and owing by Miguel Criado y Blas in order to settle
his estate, and the executor being expressly authorized to
sell property belonging to the testator for that purpose, the
conveyance was lawful, valid and effective at law because the
executor, Pedro José Alvarado y Rivera, executed it under
the powers conferred upon him for that purpose by the tes-
tator in clause 12 of his will.

On February 8, 1909, an administrative appeal was de-
cided by this court in the case of *Martínez v. The Registrar
of Caguas,* 15 P. R. R. 66, in which the appeal was from a
decision of the said registrar refusing to record the deed of
April 6, 1905, or the same deed which is now claimed to be
null and void, because "Pedro José Alvarado, in his capacity
as private testamentary executor of Miguel Criado y Blas,
has conveyed the aforesaid estates to Angel Martínez y Caba-
llero and Manuel Martínez y Caballero in payment of debts
in testamentary proceedings of Criado's estate without the
heirs of the latter having assented to the execution of the
deed," and the said decision was reversed and the record
ordered to be made on the ground that debts contracted by

the testator should always be paid before recognizing the inheritance as existing, and because, as the registrar of Caguas did not discuss or deny the existence of the debt nor question the fact that the estates transferred were conveyed to the real creditors, who gave a receipt in full for said debts, *the conveyance thus effected without the intervention of the forced heirs did not violate any prohibitory provision,* and, therefore, the deed presented in the registry under such conditions should be admitted to record.

Although that decision, having been rendered in an administrative appeal without the formality of a trial, does not constitute *res judicata* in the present controversy, we are unable to find any legal ground for changing our opinion and, therefore, sustain the doctrine laid down therein and strengthened by the reasons adduced herein.

In support of his appeal the appellant also cites as decisive of the case the jurisprudence established by the Supreme Court of the United States in the case of *Longpré* v. *Díaz,* 237 U. S. 512. In that case the conveyance was not made by an executor authorized to sell, and therefore the conveyance was subject to the requirements and formalities which the law provides for the sale of property belonging to minors when made by their parents or by their tutor.

The appellant finally contends that the Act relating to special legal proceedings, approved March 9, 1905, is the law applicable to the case because the deed of conveyance was executed in the following month of April, and in support of the invalidity of said deed cites section 25 of said act, reading as follows:

"When all or any of the heirs are absent and have no legal representative in the jurisdiction of the last place of residence of the decedent, or where the property is located, or when an heir or legatee is a minor or incapacitated, judicial administration of the property of the testator shall be necessary."

Without entering into a consideration of whether the above section is applicable to a case like the present, in which

the testator prohibited any recourse to the courts unless strictly indispensable to the settlement of his estate, we are of the opinion that, even conceding that it is, the said section does not repeal the provisions of Article 11, Chapter II, Title III, Book Third, of the Civil Code, entitled "Executors," especially as section 49 of the said act provides that "all directions of the testator as to the administration of his property shall be followed until it is turned over to the heir"; and among the directions of the testator in the present case is the power granted to the executors to sell property if necessary for the settlement of his estate.

Having reached the conclusion that an executor who is authorized in absolute terms to sell property of the testator may do so without the intervention of the heirs, whether they be forced or voluntary heirs or adults or minors, it logically follows that it is not necessary when there are minors, as in the present case, to comply with the requisites and formalities which the law provides in cases where real property belonging to minors is sold by their parents or tutors. It is the executor who sells as agent for the testator and not as representative of the minors.

As the plaintiff has no cause of action, it is unnecessary to discuss the question of limitation raised by the defendants.

For the foregoing reasons the judgment appealed from should be affirmed.